UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

WANKE CASCADE DISTRIBUTION LTD.,
an Oregon corporation,

Case No.: 3:13-CV-768-AC

                     Plaintiff,

FINDINGS AND
RECOMMENDATION

     v.

FORBO FLOORING, INC., a Delaware
corporation,

                     Defendant.

_____

ACOSTA, Magistrate Judge:

*Introduction*

       Plaintiff Wanke Cascade Distribution Ltd. ("Wanke") is unhappy with the manner in which

Forbo Flooring, Inc. ("Forbo") terminated an oral exclusive distributorship agreement . Specifically,

Wanke alleges Forbo did not give adequate notice of the termination, reneged on promises made to

Wanke, and engaged in improper contact with Wanke's customers prior the end of the agreement

Page 1 - FINDINGS AND RECOMMENDATION                              *{SIB}*

and, based on this conduct, asserts claims for breach of contract, breach of the duty of good faith and fair dealing, intentional interference with economic relations, promissory estoppel, and fraudulent misrepresentation. Forbo moves to dismiss all of these claims arguing Wanke has failed to allege sufficient facts to support its claims.

The court finds Wanke has adequately alleged Forbo failed to give Wanke reasonable notice of termination as required under the Uniform Commercial Code (the "UCC"), breached the UCC's requirement of good faith, and interfered with Wanke's customers before the end of the oral agreement through improper means. Accordingly, Forbo's motion to dismiss Wanke's breach of contract, breach of the duty of good faith and fair dealing, and intentional interference with economic relations claims should be denied. Forbo's motion to dismiss Wanke's promissory estoppel and fraudulent misrepresentation claims, however, is well taken in that all but one of Forbo's promises or representations to Wanke were not false and Wanke failed to allege it relied on the final misrepresentation. Forbo is entitled to dismissal of these two claims.

*Background*

Wanke is an Oregon corporation formed in 2006 for the purpose of purchasing many of the assets owned by the Wanke Panel Company ("Old Wanke"), a distributor of flooring and other business products in Oregon, Washington, Alaska, Montana, and parts of Idaho (the " Northwest") since 1931. (Am. Compl. ¶¶ 10-12.) At the time of the purchase, Old Wanke had been the exclusive distributor of Forbo flooring products in the Northwest since 1993. (Am. Compl. ¶ 12.) The owners of Wanke, who also owned Buckwold Western Ltd., a distributor of Armstrong flooring products in Canada, inquired about the possibility of continuing a relationship with Wanke as exclusive distributor of Forbo flooring in the Northwest after the sale. (Am. Compl. ¶¶ 14-16.) Both Old

Wanke and Forbo represented there was no written document governing the existing relationship and Forbo expressed interest in allowing Wanke to continue as the exclusive distributor of Forbo products in the Northwest. (Am. Compl. ¶¶ 16-17.) Upon reaching an oral agreement with Forbo, Wanke declined an opportunity offered by Armstrong to distribute Armstrong flooring in the Northwest. (Am. Compl. ¶¶ 14-16.)

Wanke intended the exclusive distributorship agreement with Forbo to be long term. (Am. Compl. ¶ 24.) Based on this intent, Wanke invested substantial sums in marketing the Forbo flooring line in the Northwest and purchased several million dollars of Forbo flooring product every year. (Am. Compl. ¶¶ 19, 20.)

In late October, 2010, Armstrong approached Wanke with an opportunity to distribute and service Armstrong flooring products in the Northwest but informed Wanke it would have to terminate its relationship with Forbo to do so. (Am. Compl. ¶ 54.) Wanke declined the offer based on Forbo's prior representation that Wanke would be its exclusive distributor. (Am. Compl. ¶ 54.)

In December 2010, Wanke questioned Forbo on the existence of a written agreement governing the relationship between Old Wanke and Forbo. (Am. Compl. ¶ 18.) Forbo again represented no such written agreement existed. (Am. Compl. ¶ 18.) Wanke also sought assurance from Forbo that it would continue to serve as Forbo's exclusive distributor in the Northwest. (Am. Compl. ¶ 55.) Forbo told Wanke it had no reason to be concerned Forbo would change the relationship or drop Wanke as its exclusive distributor. (Am. Compl. ¶ 57.)

Two years later, Wanke again sought reassurance from Forbo that the existing relationship would continue. (Am. Compl. ¶ 59.) Forbo again represented that "Wanke had nothing to worry about with respect to Forbo dropping Wanke as its exclusive distributor." (Am. Compl. ¶ 59.)

Page 3 - FINDINGS AND RECOMMENDATION                                    *{SIB}*

In January 2013, Forbo advised Wanke it was considering terminating the exclusive distributorship agreement and selling directly to customers in the Northwest.   (Am. Compl. ¶ 27.) In a letter dated January 30, 2013, Forbo informed Wanke it was terminating the exclusive distributorship agreement effective April 1, 2013.  (Am. Compl. ¶¶ 28, 40.)  Over Wanke's objections, Forbo promptly forwarded a standard dealer's price list for its flooring products effective as of  March 1, 2013, to Wanke's customers, informed them they could now buy the flooring products directly from Forbo, and publicly announced the termination of the exclusive distributorship agreement with Wanke.  (Am. Compl. ¶¶ 42-44.)

Wanke asserts the sixty-day termination notice was "an unreasonable and inadequate period for notice of termination" and that a one-year notice period was more appropriate based on the long-term relationship of the parties.  (Am. Compl. ¶¶ 29, 31.)  Wanke alleges as a result of the unreasonably short notice period, it has suffered lost profits of at least $3,000,000, as well as other incidental and consequential damages, including goodwill and expenses incurred in selling and servicing Forbo's flooring products.  (Am. Compl. ¶ 33.)  Wanke also alleges it relied on Forbo's promises of a continued relationship in deciding not to purse a relationship with Armstrong and that Forbo knew of such reliance at the time it assured Wanke the exclusive distributorship would continue.  (Am. Compl. ¶ 62.)  Wanke estimates it lost $4,150,000 in annual profits it would have received had it agreed to become a distributor of Armstrong products.  (Am. Compl. ¶ 65.)

*Legal Standard*

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2)(2011).  A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678); *Sheppard v. David Evans and Assoc.*, 694 F.3d 1045, 1051 (9th Cir. 2012) ("The Supreme Court has emphasized that analyzing the sufficiency of a complaint's allegations is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679)).

*Discussion*

I.  First Claim for Relief – Breach of Contract

In the First Claim for Relief, Wanke alleges Forbo breached the contract between the parties by not giving Wanke adequate notice of Forbo's intent to terminate the contract. Forbo gave Wanke sixty-days notice, which Wanke asserts was not reasonable. Wanke alleges that, based on the relationship between the parties, it was entitled to notice of one year.

The parties agree the relationship between them was governed by an oral agreement entered into in 2006. Pursuant to the terms of the oral agreement, Wanke was to serve as the exclusive distributor of Forbo flooring products in the Northwest. According to Wanke, the oral agreement

was intended to be long term.  The parties did not set a specific term for the agreement.

The parties agree that under Oregon law, an agreement which has no defined term, such as the oral agreement between Wanke and Forbo, may be terminated at will upon receipt of reasonable notice of a party's intent to terminate.  *Klamath Off-Project Water Users, Inc. v. Pacificorp*, 237 Or. App. 434, 442 (2010).  The only issue between the parties is the definition of "reasonable notice".

Wanke argues the oral agreement is a transaction relating to the sale of goods and falls within the parameters of the UCC.  Forbo does not argue to the contrary and appears to concede the applicability of the UCC to the oral agreement between the parties.

The UCC governs all transactions relating to goods, which are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale. . . ."  OR. REV. STAT. 72.1040, 72.1050 (2011).  The provisions of the UCC apply to exclusive distributorship agreements for the sale of goods.  *Zidell Explorations, Inc. v. Conval Int'l, Ltd.*, 719 F.2d 1465 (9th Cir. 1983)(court applied UCC to determine whether reasonable notice of termination was given to distributor by manufacturer); *Tele-Controls, Inc. v. Ford Indus. Inc.*, 388 F.2d 48 (7th Cir. 1967)(court applied UCC good faith requirement to termination of dealer agreement).[1]

The UCC specifically provides contracts for an indefinite term are terminable at will and termination of such a contract "requires that reasonable notice be received by the other party. . . ."

---

[1]The court acknowledges that Oregon and federal courts have considered similar distribution relationships without relying on the provisions of the UCC, presumably viewing them more as an agreement for the provision of services rather than goods.  In light of the parties apparent agreement that the UCC applies to their distributorship agreement and authority provided by the Ninth Circuit, as well as other federal circuit and district courts, that such application is appropriate, the court will consider this action in the context of the UCC only.

OR. REV. STAT. 72.3090 (2011).  "Whether a time for taking an action required under the Uniform Commercial Code is reasonable depends on the nature, purpose and circumstances of the action." OR. REV. STAT. 71.2050 (2011).  The Ninth Circuit has held the reasonableness of the notice required under Section 72.3090 "is judged by the amount of time necessary to enable the distributor to look for a new source of supply." *Zidell*, 719 F.2d at 1473 (citing OR. REV. STAT. 72.3090(3); U.C.C. § 2-309 official comment 8.)  Reasonableness of the notice is generally a factual issue to be decided by a jury. *Id.* at 1474.  One district court determined six months was reasonable notice for the termination of an exclusive distributorship lasting just over ten years under the UCC. *Delta Servs. and Equip. Inc. v. Ryko Mfg. Co.*, 908 F.2d 7, 8 (5th Cir. 1990)(parties did not appeal district court finding six-months' notice was reasonable under the circumstances).

Wanke has adequately alleged it was entitled to reasonable notice and that sixty-days' notice was unreasonable and inadequate.  Wanke's assertion it was entitled to notice of one year based on Forbo's conduct with another distributor and the relationship between Wanke and Forbo is more akin to a legal conclusion than a factual conclusion and will not be accepted as true.  However, the issue of how much notice would be considered reasonable remains and creates a viable claim for breach of contract.  Forbo's motion to dismiss Wanke's First Claim for Relief should be denied.

## II.  Second Claim for Relief – Covenant of Good Faith and Fair Dealing

The Second Claim for Relief mirrors the breach of contract claim but is based on a covenant of good faith and fair dealing.  Forbo argues the implied duty of good faith and fair dealing applies only to the ongoing performance of a contract, not to the termination of an at-will agreement.

The Oregon Supreme Court has held the statutory duty of good faith found in the provisions of the UCC displaces the common law duty of good faith in transactions to which the UCC applies.

*U.S. Nat'l Bank of Oregon v. Boge*, 311 Or. 550, 563 (1991).  The general provisions of the UCC[2] specifically provide that "[e]very contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement" and define "good faith" as "honesty in fact and the observance of reasonable commercial standards of dealing."   OR. REV. STAT. 71.3040, 71.2010(2)(t).  These provisions encompass both a subjective standard (honesty in fact), as well as an objective standard (reasonable commercial standards of fair dealing).  "To state sufficient facts to constitute a claim for breach of a good faith duty under ORS chapter 72, the claim must allege facts that fall within either component." *Chaney v. Shell Oil Co.*, 111 Or. App. 556,  569 (1992)(applying  identical  definition  of  "good  faith"  previously  found  at  OR. REV. STAT. 72.1013(1)(b)).  The Ninth Circuit, and at least one other federal circuit, have held the duty of good faith found in the UCC applies to the termination of distributor or dealer agreements under OR. REV. STAT. 72.3090 (3).  *Zidell*, 719 F.3d 1465, 1473, *Tele-Controls*, 388 F.2d 48, 51.

Wanke has not specifically alleged Forbo acted in a dishonest manner in terminating the oral agreement.  However, Wanke has alleged Forbo represented as late as December 2012 that Wanke had no reason to worry about termination of the exclusive distributorship agreement but then advised Wanke the following month of its intent to terminate the exclusive distributorship agreement.  These allegations support a claim that Forbo acted dishonestly with regard to the circumstances surrounding the termination of the oral agreement between the parties.  Wanke also alleges Forbo's sixty-days' advance notice of termination was not reasonable based on the expectations of the parties and the "type of long-term exclusive distribution contract with a major supplier".  (Am. Compl. ¶¶ 29, 31,

---

[2]The general provisions of the UCC, found in OR. REV. STAT. 71.1010-.3100, apply to transactions governed by the remainder of the UCC, including chapter 72, codified as  OR. REV. STAT. 72.1010-.8200.   OR. REV. STAT. 71.1020 (2011)

36-7.) These specific allegations adequately state a claim that Forbo failed to act in accordance with reasonable commercial standards of fair dealing by terminating the long-term relationship of the parties with only sixty-days' notice.

Wanke has alleged facts to support a claim for violation of the requirement of good faith found in the UCC. Forbo's motion to dismiss this claim should be denied.

III.  Third Claim for Relief – Intentional Interference with Economic Relations

Wanke's intentional interference with economic relations claim ("interference claim") is premised upon Forbo's contacts with Wanke's customers during the sixty-day notice period and prior to the termination of the exclusive distributorship agreement. Wanke specifically alleges Forbo's disclosure of its decision to terminate the exclusive distributorship, attempts to sell directly to Wanke's customers during the sixty-day notice period without Wanke's consent, and hiring of one of Wanke's most productive sales representatives violated the exclusivity of their agreement, was unethical, and violated concepts of fair play. Wanke alleges as a result of Forbo's conduct, Wanke suffered lost sales and profits, and damage to its reputation and goodwill in the business community.

To state an interference claim under Oregon law, a plaintiff must allege:

(1) the existence of a professional or business relationship; (2) intentional interference with that relationship; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and damage to the economic relations; and (6) damages.

*Nw. Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or. 487, 497 (1999). Forbo argues Wanke has failed to allege facts to support the fourth element – that Forbo acted through improper means or for an improper purpose – relying on a privilege afforded business competitors.

The Oregon courts have adopted the business competitor's privilege as set forth in the

Restatement of Torts.  The Restatement in relevant part provides that:

> One is privileged purposely to cause a third person not to enter into or continue a business relation with a competitor of the actor if
>
>> (a) the relation concerns a matter involved in the competition between the actor and the competitor, and
>>
>> (b) the actor does not employ improper means, and
>>
>> (c) the actor does not intend thereby to create or continue an illegal restraint of competition, and
>>
>> (d) the actor's purpose is at least in part to advance his interest in his competition with the other.

*N. Pac. Lumber Co. v. Moore*, 275 Or. 359, 369 (1976)(citing 4 RESTATEMENT OF TORTS § 768 (1939).  The Restatement recognizes a competitor should be allowed to engage in conduct which seeks to divert business from competitors provided the competitor does not use improper means or create an illegal restraint of competition.

Wanke argues Forbo is not protected by the privilege because it was not a competitor of Wanke at the time the alleged conduct occurred and relies on *Chanay v. Chittenden*, 115 Ariz. 32 (1977), as authority supporting this argument.  In *Chanay*, an insurance agent selling Union Mutual policies in the state of Arizona asserted an interference claim against an officer of Union Mutual alleging the officer induced Union Mutual to terminate its agreement with the agent with the intent to move to Arizona and take over the agent's business.  *Id*. at 35-36.  The officer cited § 768  and argued because he was acting out of economic motives, he was entitled to rely on the competition privilege found therein.  *Id*. at 37.  The court rejected this argument finding that § 768 deals with competitors and because the officer was not a competitor when the alleged interference occurred, the privilege did not apply.  *Id*.

*Chanay* is distinguishable from the matter currently before the court. In *Chanay*, the defendant was an officer of an insurance company. There is no evidence the officer was actively selling insurance policies at the time of the interference, in Arizona or elsewhere. Here, Forbo, the manufacturer and distributor of the flooring product, does engage in the sale of its product directly to customers in other parts of the United States and could reasonably be considered a "competitor" of Wanke in the flooring product industry. Additionally, the court is not convinced that § 768 requires a business to engage in the sale of similar products in an area for some time before it is considered a competitor of the purposes of that section. If that were true, only established business could engage in competition with its competitors in an attempt to lure away customers, a conclusion not justified by the language or the purpose of § 768.

However, even assuming Forbo is entitled to protection under the business competitor privilege, the privilege does not apply where a competitor employs "improper means" in luring customers away from a competitor. For the purposes of § 768, "improper means" may "be established by showing a violation 'of a statute or other regulation, or a recognized rule of law, or perhaps an established standard of a trade or profession.' " *Volt Services Group v. Adecco Emp't Services, Inc.*, 178 Or. App. 121, 129 (2001)(quoting *Top Service Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 209-10 (1978)). "Improper means" for an interference claim include "violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation, and disparaging falsehoods." *Conklin v. Karban Rock, Inc.*, 94 Or. App. 593, 601(1989).

In *Volt*, the plaintiff asserted an interference claim against the defendant, a competitor in the employment service industry, based on the defendant's attempts to hire plaintiff's temporary employees immediately after Nike replaced plaintiff with defendant as its employment service

provider. *Volt*, 178 Or. App. at 123-24. The defendant moved for summary judgment arguing its conduct fell squarely within the business competitor's privilege found in §768. *Id*. at 133. The plaintiff asserted the defendant used improper means in obtaining the services of the plaintiff's temporary employees who were placed in assignments at Nike at the time of the transition of employment service providers and, therefore, was not entitled to rely on § 768. *Id*. at 129. The plaintiff offered as evidence of improper means the code of ethics applicable to employment service providers, which require a reasonable transition period during which employees of the outgoing provider would continue to work for the outgoing firm before given the opportunity to move to the new staffing firm. *Id*. at 130. The court found violation of an established industry standard, such as the code of ethics, would constitute improper means under § 768 and denied the defendant's motion for summary judgment. *Id*. at 131-33.

Wanke alleges Forbo violated both the UCC's good faith provision and reasonable commercial standards by contacting and attempting to sell flooring products to Wanke's customers immediately after giving Wanke notice of its decision to terminate the oral exclusive distributorship agreement. Based on the holding in Volt, the UCC provisions establish industry standards and alleged violation of those standards would constitute improper means.

Additionally, while the proper construction of term "exclusive" is not alleged, viewing that term in a light most favorable to Wanke, Forbo agreed Wanke would be the only distributor of Forbo products in the Northwest during the term of the agreement.[3] Forbo's attempts to sell Forbo products in the Northwest prior to the termination of the oral agreement violated the exclusivity of oral

---

[3]Other interpretations of "exclusive" are that Wanke is allowed to sell only Forbo flooring but that other retailers would sell Forbo flooring in the Northwest as well, or that Wanke may sell Forbo flooring only in the Northwest.

distributorship agreement and provide additional support for Wanke's claim Forbo used improper means to interfere with Wanke's relationship with its customers.

On the other hand, Wanke's reliance on allegations Forbo hired one of Wanke's most productive sales representatives to help Forbo sell to Wanke's customer in support of the interference claim is not well founded. Oregon courts have held the hiring of a competitor's employee and use of contacts and information gained by the employee during his prior employment is "is privileged and not an 'improper means' of competition' under § 768. *Nw. Pac.*, 275 Or. at 438 ("To hold that Deep South could not take advantage of Moore's customer contacts or the names of plaintiff's customers retained in Moore's memory would place too heavy a restriction upon ordinary business competition and also would unduly restrain mobility in the job market.").

The court finds Wanke has adequately alleged an interference claim based on Forbo's attempts to sell Forbo products to Wanke's customers immediately after notifying it of the termination of the oral distributorship agreement, which violated the UCC's good faith requirement, reasonably commercial standards and the exclusivity provision of the oral distributorship agreement, but not based on Forbo's hiring of one of Wanke's sales representatives. Forbo's motion to dismiss Wanke's Third Claim for Relief should be denied.

IV.  Fourth Claim for Relief – Promissory Estoppel

In support of its promissory estoppel claim, Wanke alleges Forbo promised, on more than one occasion, that Wanke would continue to be Forbo's exclusive distributor in the Northwest and that no written agreement existed between the parties governing this relationship. Wanke further alleges that in reliance on these promises, it declined the opportunity to distribute Armstrong flooring products in the Northwest. Wanke seeks to recover the profits it would have enjoyed as an

Armstrong distributor.

Promissory estoppel is a "substitute for consideration, and provides a basis for enforcing a promise as a contract despite lack of consideration, when the promisee has relied on a promise to his or her detriment." *Natkin and Co. v. H.D. Fowler Co.*, 128 Or. App. 311, 321 (1994). Under Oregon law, promissory estoppel requires: 1) a promise; 2) which the promisor could reasonably foresee inducing the sort of conduct which occurred; 3) actual reliance on the promise; 4) resulting in a substantial change in the promisee's position. *Rick Franklin Corp. v. State ex. Rel. Dept. Of Transp.,* 207 Or. App. 183, 190 (2006). The promise must "be as clear and well defined as a promise that could serve as an offer, or that otherwise might be sufficient to give rise to a traditional contract supported by consideration." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096,1108 (9th Cir. 2009)(quoting 1 Samuel Williston & Richard A. Lord, A TREATISE ON THE LAW OF CONTRACTS § 1.1 (4th ed. 2007)). "Relief under promissory estoppel requires evidence that the defendant breached the promise." *Kraft v. Arden*, No. CV 07-487-PK, 2008 WL 4866182, at *13 (D. Or. Nov. 7, 2008) A party may rely on promissory estoppel to recover reliance damages when a party acts in reliance on a indefinite promise to create a binding obligation. *Kraft*, 2008 WL 4866182 at *10, (*citing Staley v. Taylor*, 165 Or. App. 256, 261 n.5 (2000)).[4]

In support of the promissory estoppel claim, Wanke relies on three separate representations by Forbo that no written agreement existed with regard to Wanke and Forbo's exclusive distribution relationship. Based on other allegations in the amended complaint, and the documents referenced

---

[4]The cases also mentioned that promissory estoppel may be used as a consideration substitute in a breach of contract claim in which the plaintiff seeks the usual contractual remedies. Based on the allegations of Wanke's amended complaint, this form of promissory estoppel is not at issue.

therein and submitted by Forbo,[5] this representation was accurate. The 1993 "Memo of Agreement" offered by Forbo, set forth a proposed relationship between Forbo and Old Wanke (the "Agreement"). The Agreement is not signed by either party and does not grant Old Wanke exclusive distributor rights. (Def.'s Mot. to Dismiss Ex. A.) The Agreement was not identified as an asset purchased by Wanke and Wanke does not allege it assumed Old Wanke's obligations under the Agreement. At the time Wanke purchased certain assets from Old Wanke, Wanke and Forbo entered into a new, oral agreement, governing the exclusive distribution relationship between Wanke and Forbo. While Forbo referenced the Agreement in a January 30, 2013, letter advising Wanke of Forbo's termination of the oral agreement (the "Letter"), the Letter specifically states an understanding that "no contract exists between Forbo and Wanke (thereby giving Forbo the immediate right to terminate the parties' at-will relationship)." (Def.'s Mot. to Dismiss Ex. B.) The reference to the Agreement in the Letter merely provides context for Forbo's decision to give Wanke sixty-days' notice, rather than no notice at all.

The allegations in the amended complaint and the documents referenced therein, establish that the exclusive distribution relationship between Wanke and Forbo was oral and that the Agreement was not binding on Wanke and Forbo. Accordingly, Forbo's representation that no written agreement governing the relationship between Wanke and Forbo existed was accurate and, as such, does not support a claim for promissory estoppel.

Wanke also relies on promises made by Forbo in 2006, 2010, and 2012, that the exclusive

---

[5]A district court ruling on a motion to dismiss "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998), *superceded by statute on other grounds as stated in Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006)).

distribution relationship between Wanke and Forbo would continue. To the extent those promises were made in 2006 and 2010, they were not breached. The relationship between the parties continued for at least two years after the promises were made. There is no allegation Forbo promised the relationship would continue for a specific number of years. In fact, Wanke argues the relationship is governed by OR. REV. STAT. 72.3090, thereby conceding it had an indefinite term. Wanke has failed to allege facts which would establish Forbo did not perform its promises to continue the exclusive distribution relationship with Wanke in 2006 and 2010.

Finally, Wanke alleges that in December 2012, Forbo promised Wanke it "had nothing to worry about with respect to Forbo dropping Wanke as its exclusive distributor." (Am. Compl. ¶ 59.) Despite this promise, Forbo notified Wanke in January 2013 it was terminating the exclusive distributorship agreement, arguably breaching the promise made just two months earlier. The court finds that, in light of the proximity in time between the promise and the notice of termination, Wanke could state a viable promissory estoppel based on the December 2012 promise. However, Wanke has not alleged it actually relied on this last promise. Wanke does not allege it rejected a distributorship opportunity from Armstrong, or made a decision not to pursue a distributorship opportunity from Armstrong, in December 2012 based on Forbo's promise. Consequently, Wanke has failed to state a claim for promissory estoppel with regard to the December 2012 promise.

Forbo did not breach its promise that no written agreement between Wanke and Forbo existed governing their exclusive distributorship agreement or its promises in 2006 and 2010 that the exclusive distributorship agreement would continue. Forbo is entitled to the dismissal of Wanke's promissory estoppel claim based on these promises. While Wanke has alleged facts sufficient to establish Forbo did breach the December 2012 promise that Wanke had nothing to

worry about with regard to the exclusive distributorship agreement, Wanke has failed to allege it changed its position in reliance on this promise.  Accordingly, Forbo is entitled to dismissal based on this promise as well.  Forbo's motion to dismiss Wanke's promissory estoppel claim should be granted.

V.  Fifth Claim for Relief – Fraudulent Misrepresentation

Wanke again relies on Forbo's representations that no written agreement exists between the parties and that the exclusive distributorship agreement between the parties would continue as the bases for its fraudulent representation claim.  As with the claim for promissory estoppel, these representations do not support a viable fraud claim.

To allege a *prima facie* claim for fraud, a plaintiff must plead: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that the representation should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.  *Webb v. Clark*, 274 Or. 387, 391 (1976)(quoting *Rice v. McAlister*, 268 Or. 125, 128 (1974)).  "One species of a misimpression that will give rise to an actionable claim in fraud is a promise made with the knowledge that it will not be performed or with reckless disregard about whether it will be performed."  *Estate of Schwarz v. Philip Morris Inc.*, 206 Or. App. 20, 39 (2006)(citing *Elizaga v. Kaiser Found. Hospitals*, 259 Or. 542, 548 (1971)).

With regard to the representations that no written agreement existed with respect to the parties' distribution relationship, the allegations of the amended complaint and the documents referenced therein establish this representation was true.  Wanke and Forbo's relationship is

governed by the oral agreement entered into between the parties when Wanke bought assets from Old Wanke in 2006.  The mere existence of the Agreement, which is not signed by either Old Wanke or Forbo (raising doubts about its enforceability with regard to the original parties, not to mention Wanke) does not establish the Agreement applied to the relationship between Wanke and Forbo, especially in the absence of any allegations Wanke purchased the Agreement from Old Wanke and assumed the obligations thereunder.

As discussed above, Forbo's 2006 and 2010 representations that the long-term exclusive distribution relationship with Wanke would continue are also not false.  The relationship did, in fact, continue for at least two years after those representations were made.  While a similar representation made in December 2012 could be considered false in light of the decision by Wanke to terminate the relationship just two months later, Wanke fails to allege it relied on the December 2012 misrepresentation by declining, or failing to pursue, an opportunity with Armstrong during that time period.

Wanke has failed to allege Forbo made false representations or, in one instance, that Wanke relied on a false representation.  Wanke's fraudulent misrepresentation claim should be dismissed.

*Conclusion*

Forbo's motion (#7) to dismiss should be DENIED with regard to Wanke's claims for breach of contract, breach of the duty of good faith and fair dealing, and intentional interference with economic relations, and GRANTED with regard to Wanke's promissory estoppel and fraudulent misrepresentation claims.

Scheduling Order

The Findings and Recommendation will be referred to a district judge for review.

Objections, if any, are due **September 5, 2013**.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 20th day of August, 2013.


_____
        /s/ John V. Acosta
        JOHN V. ACOSTA
United States Magistrate Judge