IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

WANKE CASCADE DISTRIBUTION LTD, an
Oregon corporation,

                Plaintiff,

        v.

FORBO FLOORING, INC., a Delaware
corporation,

                Defendant.

3:13-cv-768-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

      The parties seek the court's renewed assistance to resolve their disagreement over the form of protective order to be used in this breach of contract and intentional economic interference case between two flooring products industry competitors. The court conducted a discovery conference on February 20, 2014, to resolve this and other discovery disputes between the parties. During the discovery conference the court directed counsel to confer further regarding the form of protective order and, if their disputes remained unresolved, to submit to

the court their respective proposed protective orders no later than March 28, 2014.[1]  Counsel conferred and resolved additional disagreements but could not reach full agreement on the protective order dispute.  Consequently, both sides submitted to the court a letter brief, with attachments, explaining their respective positions on the protective order.[2]  The court heard additional argument on April 11, 2014.

Wanke argues certain of its documents produced to Forbo should be afforded "Attorney's Eyes Only" ("AEO") protection to prevent Forbo from obtaining a competitive sales advantage in the flooring products business.  Forbo argues AEO protection is unwarranted because Wanke has not demonstrated particularized harm would result from disclosure of these documents to Forbo employees, and because its employees must review the documents to advise Forbo's counsel regarding the strength of Wanke's claims.

The court finds good cause exists to enter a two-tier protective order that permits the parties to designate documents as either "Confidential" or "Attorney's Eyes Only."  Concurrent with this Opinion and Order, the court enters the form of protective order to be used in this case, which further specifies the good cause finding and identifies the precise categories of documents which may be designated "AEO".  A prompt decision on the issue is required because of the

---

[1] The transcript of this hearing appears in the court file as Document No. 32.

[2] These submissions are filed in the court record along with this Opinion and Order.

Page 2 - OPINION AND ORDER

proximity of scheduled depositions and the importance to ongoing document production. Accordingly, and because the parties and their lawyers are familiar with the arguments and legal authorities surrounding the protective order issue, this Opinion and Order addresses only the pivotal points of the dispute, and incorporates by reference and citation background and legal authority.

First, for the applicable standards the court refers to and incorporates herein by reference those authorities cited and discussed in *Foltz v. State Farm Mutual Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003), *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992), *Santella v. Grizzly Indus., Inc.*, Civil No. 3:12-mc-00131-SI, 2012 WL 5399970 (D. Or. Nov. 5, 2012), and *Tinn v. EMM Labs, Inc.*, 556 F. Supp. 2d 1191 (D. Or 2008). *Foltz* established the general framework for entering and modifying protective orders; *Brown Bag*, *Santella* and *Tinn* provide guidance for resolving the current dispute.

In *Santella*, the parties agreed to an protective order that included an AEO designation option, but a dispute arose when the defendant moved to disclose to its retained expert a subpoenaed third-party's confidential information. The third-party argued a substantial risk of competitive harm would result and AEO protection should apply to preclude review by defendant's expert. Defendant argued it needed to rely on its expert's analysis of the confidential information, and defendant's expert agreed to be bound by the protective order's nondisclosure requirements. The court concluded defendant's expert could receive and review

Page 3 - OPINION AND ORDER


the confidential information. It first reviewed the "risk of inadvertent disclosure," an assessment that turned on whether the retained expert was a "competitive decision-maker." 2012 WL 5399970, at *4-5. The court found the expert was not, as he had no involvement in the defendant's business operations and his knowledge of the third-party's confidential information could not be used to the third-party's competitive detriment. Id. at *5-*7.

Here, there is a high risk of inadvertent disclosure of Wanke's competitively sensitive information because the Forbo employee most likely to review Wanke's confidential information and advise Forbo's lawyers is Forbo's general manager. Forbo's counsel stated at hearing that Forbo's general manager is the likely Forbo employee with whom counsel would consult regarding Wanke's confidential pricing information, customer lists, and similar data; the company's relatively small size eliminated suitable substitutes at lower levels of responsibility in the company. The can be no reasonable disagreement that Forbo's general manager is a, if not *the*, competitive decision-maker for the company, and this status distinguishes him from the expert in *Santella*. There, the court found no meaningful risk of inadvertent disclosure by the defendant's expert because the expert was not "in a position to effectuate or direct decisions made using knowledge that is tainted by [third-party's] confidential information." 2012 WL 5399970, at *6. Here, the Forbo's general manager occupies that exact position. The expert in *Santella* worked independently and was not involved with defendant's business operations.

Here, Forbo's general manager is – and, in fact, might *be*, based on its counsel's descriptions of the general manager's role in the company – Forbo's business operations.

Nor can Forbo's general manager's assurance of non-disclosure or non-use protect Wanke here, as did *Santella* expert's assurance protect the third-party's competitive information under the facts of that case. The Forbo general manager's role is similar to that of the general counsel in *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992). There, plaintiff's in-house counsel served as plaintiff's "sole legal advisor," and the district judge found the relevant question to be whether plaintiff's counsel's employment would necessarily entail advising plaintiff in areas relating to defendant's trade secrets:

> The magistrate expressly credited in-house counsel's integrity and good faith. The magistrate had to consider, however, not only whether the documents could be locked up in cabinets, but also whether Brown Bag's counsel could lock-up trade secrets in his mind, safe from inadvertent disclosure to his employer once he had read the documents. As the *U.S. Steel* court suggested, the magistrate therefore inquired into counsel's responsibilities as Brown Bag's sole legal advisor and personnel manager.

960 F.2d at 1471. Here, Forbo's general manager's responsibilities at least involve decision-making on pricing and other areas of Forbo's business that overlap similar areas of Wanke's business and contained within Wanke's confidential information. As with the in-house counsel in *Brown Bag*, Forbo's general manager cannot reasonably be expected to "lock-up" Wanke's trade secrets in his mind to prevent inadvertent disclosure in his decision-making role as Forbo's general manager.

Page 5 - OPINION AND ORDER

The court also finds that, on this record, Forbo has not demonstrated a substantial risk of prejudice if the AEO designation option is available in this case. Forbo has not shown an inability to find an expert who can supply its lawyers with the same knowledge and expertise apparently possessed by Forbo's general manager or by other competitive decision-makers who work for Forbo. Again, *Brown Bag* provides guidance. The court there found plaintiff failed to demonstrate prejudice because its concerns were too speculative, it failed to demonstrate prejudice, it had "never attempted" to employ an independent consultant, and it failed to show undue burden. 960 F.2d at 1471-72. Here, Forbo references each of these points but only as potential hindrances, burdens, or prejudices. Further, because the protective order the court will enter provides a procedure for removing the AEO designation, Forbo's concerns are adequately addressed and balanced against Wanke's interests in safe-guarding its competitively sensitive information.

IT IS SO ORDERED.

DATED this 11th day of April, 2014.

_____
JOHN V. ACOSTA
United States Magistrate Judge